Cudahy Packing Co. *v.* Stovall, State Treasurer.

[72 South. 870.]

1. Taxation. *Refrigerator cars. Earnings. Constitutional provisions. Special mode of valuation and assessment. Equal protection of law. Uniform and equal. Burden upon interstate commerce.*

Laws 1912, chapter 113, sections 1-8, designating as freight line companies every corporation engaged in the business of operating, furnishing or leasing cars for the transportation of freight on railroad lines in whole or in part within the state not owned or operated by such corporations, and not otherwise listed for taxation, and requiring such corporation to make certain sworn statements to the state auditor, and providing that for purposes of taxation such cars shall have a *situs* within the state, and imposing a tax upon the property of such corporations of three per cent., upon their gross earnings, and providing for the col-

lection of such tax, and penalties for failure to furnish a state-
ment or to pay the tax, considered with Laws 1912, chapter
114, taxing equipment companies, includes refrigerator cars, the
property of a packing company, used solely· for the transporta-
tion of its products over railroad lines within and without the
state, though it owns or leases no railroad within the state or
elsewhere.

2. Taxation.   *Refrigerating cars.   Earnings.   Constitutional provi-
   sions.   Special mode of valuation and assessment.*

   Such Statute does not contravene either section 112 of our state
   Constitution or any provision of the Federal Constitution, since
   by the express provisions of section 112 of our state Constitu-
   tion the legislature may provide for a special mode of valuation
   and assessment for corporate property or for particular species
   of property belonging to persons, corporations or associations
   not situated wholly in one county, and such statute is a means
   of imposing a legitimate tax on the rolling stock of a· packing
   company situated and used in the state.

3. Same.

   Such tax as equal and uniform as contemplated by section 112, be-
   cause all property of the·same kind is classed for taxation in
   the same way.

4. Same.

   Such tax' is not invalid as imposing a burden on interstate com-
   merce.   The mere fact that a corporation is engaged in inter-
   state commerce does not exempt its property from taxation and
   since resort to the receipts of property or capital employed in
   part at least, in interstate commerce,·when such receipt or capital
   are not taxed as such, but are taken as a mere measure of a
   tax of lawful authority within the state, such tax is within the
   taxing power of the state.

Appeal from the chancery court of Hinds county.
Hon. O. B. Taylor, Chancellor.

Bill for injunction by the Cudahy Packing ·Company
against P. S. Stovall, state treasurer.   Demurrer sus-
tained, temporary injunction dissolved, bill dismissed
and complainant appeals.

The opinion of the chancellor, referred to in the
opinion of the court, was as follows·:

The complainant in this case is an Illinois corpor-
ation, having its domicile and principal office in the

city of Chicago. It is a packing house company, and in the conduct of its business of delivering its products to dealers and consumers uses refrigerator and other cars owned by it exclusively and used only for the purpose of transporting its own products. It does not own, nor has it leased, any railroad line in this state; but the various railroad companies haul its cars for hire into Mississippi and into many other states where the said company sells its products.

Chapter 113 of the laws of Mississippi of 1912 designates as freight line companies every person or corporation engaged in the business of operating cars, or of furnishing or leasing cars, not otherwise listed for taxation in Mississippi for the transportation of freight on railroad lines in whole or in part within the state, the said railroad lines not being owned, leased, or operated by such person or corporation. The chapter provides for certain sworn statements to be made to the state auditor by such freight line companies, and declares that for the purpose of taxation all cars of such companies used exclusively or partly within and partly without this state have a *situs* within this state. The chapter further provides in section 5 for a tax upon the property of such companies, in lieu of all other taxes, of 3 per centum upon the gross earnings of such companies; the term "gross earnings" to be construed to mean all earnings on business beginning and ending with this state, and a proportion, based upon the proportion of mileage over which such business is done, of earnings on all interstate business passing through, or into, or out of the state. The remaining sections of the act provide for the collection of the tax, and for penalties for failure to furnish statements, or for failure to pay the tax.

Complainant filed its bill in the chancery court and secured an injunction to prevent the collection of the tax, seeking to avoid it on the ground that it is not a freight line company within the meaning of the act,

and further upon the ground that the act is in violation
of certain provisions of both the state and the United
States Constitutions. We are of the opinion that un-
der this act the complainant is classed as a freight
line company, and it only remains to consider whether
or not the act violates any of the provisions of the
Constitutions.

In the outset it should be noticed that the tax im-
posed is in lieu of all other taxes upon the said prop-
erty of complainant. We do not think it is a privilege
tax, but that the legislature, following the provisions
of section 112 of the state Constitution, which recog-
nizes the fact that it is necessary for a special mode
of valuation to be provided for assessing corporate
property not wholly within one county, has provided
for a plan to arrive at the true valuation of the prop-
erty to be taxed. In other words, the legislature sim-
ply means to say that the value of complainant's prop-
erty for taxation does not only consist of the actual
value of the cars used by it, but that the real value is
reached by adding to this that increased value and
worth which arises by reason of the fact that these
cars are used in connection with and as a part of a
great business, operating over many lines of railroad,
through many states, and possessing valuable fran-
chises, rights, and privileges, and forming one in-
divisible unit. In fact, doubtless, the principal value
of its property consists in all this combination of units,
all interwoven and interrelated to each other, and mak-
ing, as stated, one great business. The right of the
states to reach and tax this true value is conceded over
and over again in decisions of the supreme court of
the United States. We mention this to show that the
contention that the tax is not uniform and equal with
other taxes, that it is out of proportion to the value
of the property, and that it denies complainant equal
protection of the laws, is without merit. Aside from
this, however, we think that under this act all property

of the same kind and class is classed for taxation in the same way, and, as we understand it, is therefore equal and uniform in a constitutional sense.

To our mind, the real difficult problem in this case is the solution of the question as to whether or not this act does not violate the clause of the Federal Constitution in reference to interstate commerce. There are a great number of decisions of the supreme court of the United States construing this section from cases arising under taxation statutes of the various states, the statutes being somewhat similar to the act here in question. Some of these decisions sustain, others condemn, the statutes, and it is very difficult, indeed, to arrive at the true line between that class of statutes which have been upheld and those which have been condemned. As we have stated, the supreme court holds that not only is the physical property, such as cars, track, wire, etc., of corporations engaged in interstate commerce taxable within the state where situated, but that in addition to this the state has the power to tax all the property of such corporations used in interstate business, in proportion to the mileage within the state as compared with the mileage without the state, and that to this may also be added the proper proportion of the increased value of such property which arises and is created by reason of its separated articles of property being combined and used as one unit, and making an extensive business, possessing valuable franchises, privileges, and rights, and extending into many states and over many lines of railroad.

It has also consistently held that although the transportation of the subjects of interstate commerce, or the receipts received therefrom, or the occupation of the business of carrying it on, cannot be directly subjected to state taxation, yet property belonging to corporations engaged in such commerce can be, and, whatever the particular form of the exaction, if it is essentially only property taxation, it will not be considered as

falling within the inhibition of the Constitution. The fact that the proper taxation of its property may have the effect of incidentally affecting interstate commerce makes no difference at all. It enjoys the protection of the laws of the state government, and is under obligation to contribute to its support. It matters not by what name a tax may be called, yet if it amounts to only a tax upon its property, then such a tax is valid. In this case we do not believe that the tax is imposed upon the gross earnings, but that these gross earnings are used simply and alone, as we have stated, for the purpose of arriving at the value of the property taxed. The statute plainly says that it is upon the property of complainant, and goes further in saying that it shall be in lieu of all other taxes.

We believe that a careful reading of the following cases will disclose the fact that under the law the property of complainant is properly taxable under the act and that the same is constitutional: Case note, 57 L. R. A. 59; *Maine* v. *Trunk Ry. Co of Canada,* 142 U. S. 217, 12 Sup. Ct. 121, 35 L. Ed. 994; *Wisconsin & Michigan Ry. Co.* v. *Powers,* 191 U. S. 379, 24 Sup. Ct. 107, 48 L. Ed. 229; *Adams Express Co.* v. *Ohio State Auditor,* 165 U. S. 194, 17 Sup. Ct. 305, 41 L. Ed. 683, and rehearing on same case, 166 U. S. 185, 17 Sup. Ct. 604, 41 L. Ed. 965; *Henderson Bridge Co.* v. *Kentucky,* 166 U. S. 150, 17 Sup. Ct. 532, 41 L. Ed. 953; *Cleveland etc., R. R. Co.* v. *Backus,* 154 U. S. 439, 14 Sup. Ct. 1122, 38 L. Ed. 1041; *Western Union Tel. Co.* v. *Massachusetts,* 125 U. S. 530, 8 Sup. Ct. 961, 31 L. Ed. 790; *American Refrigerating Transit Co.* v. *Hall,* 174 U. S. 70, 19 Sup. Ct. 599, 43 L. Ed. 899; *Union Ref. T. Co.* v. *Lynch,* 177 U. S. 149, 20 Sup. Ct. 631, 44 L. Ed. 708. As to due process of law and equal protection of laws under the Fourteenth Amendment: *Merchants' & Manufacturers' Bank* v. *Pa.,* 167 U. S. 461, 17 Sup. Ct. 829, 42 L. Ed. 236.

For the foregoing reasons we are of the opinion that the demurrer is well taken and should be sustained.

*Boothe & Pepper,* for appellant.

*Geo. H. Ethridge,* Assistant Attorney-General for appellee.

STEVENS, J., delivered the opinion of the court.

### STATEMENT OF THE CASE.

Appellant is a nonresident corporation, chartered under the laws of the state of Illinois, extensively engaged in the slaughterhouse and packing business. This company, as complainant in the court below, filed its bill of complaint in the chancery court of Hinds county, seeking to restrain appellee as the treasurer of the state from collecting a certain tax and the penalty thereon imposed by chapter 113, Laws of 1912, entitled "An act providing for the taxation of freight line companies." Section 1 of this act reads as follows:

"Be it enacted by the legislature of state of Mississippi, that every person or persons, joint stock association or corporation, wherever organized or incorporated engaged in the business of operating cars, or engaged in the business of furnishing or leasing cars not otherwise listed for taxation in Mississippi, for the transportation of freight (whether such cars be owned by such company or any other person or company) over any railroad line or lines, in whole or in part, within this state, such line or lines not being owned, leased or operated by such company, whether such cars be termed box, flat, coal, ore, tank, stock, gondola, furniture or refrigerator cars, or by some other name, shall be deemed a freight line company."

Section 2 of the act makes provision for sworn statements to be rendered to the auditor, giving the

name and location of the company, the nature of its business, the total number of cars used, and the whole length of the line of railway over which the company runs its cars, as also the length of so much of its line as is without and is within the state of Mississippi, and other information therein called for.  Section 3 declares that for the purpose of taxation "all cars used exclusively within this state, or used partially within and without the state, are hereby declared to have a *situs* in the state," etc. The act also provides that every freight line company shall render a statement showing the total gross earnings received from all sources by the company within the state for the year ending December 31st; and section 5 defines the term "total gross earnings" as meaning "all earnings on business beginning and ending within the state, and a proportion, based upon the proportion of milage over which such business is done, of earnings on all interstate business done, of earnings on all interstate business passing through or into or out of the state;" and subsequent provisions require each freight line company to pay a tax "on its property and in lieu of all other taxes upon the same" equal to three per centum upon the gross earnings of the company as defined in the act.  Taxes collected under this statute are to be paid into the state treasury and credited to the general revenue fund. Section 7 provides for a certain penalty to be imposed for failing to furnish the required statements, while section 8 imposes a penalty for failing to pay the tax.

It appears that a small tax of thirty dollars and seventy cents was assessed against appellant as a freight line company under the act in question, and, upon refusal of appellant to pay, the treasurer was threatening to distrain sufficient goods and chattels belonging to complainant out of which to realize the tax and ten per cent. penalty thereon for each month after demand made. The company thereupon exhibited its bill for an injunction and obtained a temporary writ of

injunction. Appellee appeared and demurred to the bill of complaint. The demurrer was sustained, the injunction dissolved, and the bill dismissed. From the decree dismissing the bill appellant prosecutes this appeal, contending, first, that appellant is not a freight line company within the purview and meaning of this act; and, secondly, that if appellant comes within the provisions of the act it should have prevailed in this suit, because the act violates section 112 of our state Constitution, as also, clause 3 of section 8 of article 1, and section 1, article 14, of the Constitution of the United States.

## Opinion.

Appellant by its bill admits that it is doing a large packing house business over the United States, including Mississippi, and that in the handling and shipping of its products it has found it economical and expedient to have constructed and to use its own refrigerator cars, suitable for the purpose of properly handling meats and other packing house products, and that these cars are the property of the complainant, used solely and only for the transportation of the complainant's products. The bill further shows upon its face that these cars containing the property and products of appellant are drawn and carried over railroad lines in Mississippi. It is contended, however, that appellant owns no railroad in Mississippi or elsewhere; that it is not the lessee of a railroad; that its cars are its own property, and "are not used for profit or hire," and therefore that appellant is not operating a freight car line within the meaning of the act under review.

We are of the opinion that complainant comes within the terms of the act. This statute appears to have been copied and indeed is almost an exact rescript of an act passed by the legislature of the state of Minnesota as chapter 250, Laws of 1907 of that state. The main dif-

ference between the Minnesota statute and our statute is that under the Minnesota law a tax equal to four per cent. of the gross earnings is imposed, whereas our statute imposes a tax equal to only three per cent. This very packing house company refused to pay the Minnesota tax, and a suit by the state brought that statute up for examination and review by the supreme court of Minnesota, as disclosed by the case of *State* v. *Cudahy Packing Co.*, 129 Minn. 30, 151 N. W. 410. Section 1 of our statute is in the exact words of section 1 of the Minnesota statute, and the opinion of the Minnesota court, among other things, says:

"We think defendant comes clearly within this law. The intention to bring the large shippers who furnish the cars for the transportation of their products is indicated, not only by the clause in parenthesis, but by the careful description of the kind of cars usually owned and operated by these shippers. . . . The defendant is not an equipment company, as described in the stipulation, nor as defined in the original statute. It was never engaged in the business of furnishing or leasing cars to be used in the operation of railroads, but it furnished cars for the conduct of its own transportation business. . . . It is evident that operating here does not refer to the physical power exerted in moving the cars upon the railroad tracks, but to the fact that the freight line company directs and controls the movement of the cars employed in the conduct of its transportation business as to kind and quantity of freight to be carried, the route, and the destination."

The same contentions made by this company in the Minnesota case are now made before us. Appellant comes within the plain terms of the statute. It cannot free itself from the burden of this tax by simply averring in the bill that its cars are not operated "for profit or hire." The manifest purpose of the statute is to impose a tax upon such property of the company as is used or operated in Mississippi. It is a matter of common

knowledge that these large packinghouse companies ship their products in carload lots and in their own cars, and these cars are virtually moving commissaries. Such cars are not taxable as a part of the rolling stock or equipment of railroads, for the simple reason that they do not belong to the several railway companies who contribute to the revenues of our state. It is certain that the use of these cars does not represent a donation to the railroads, and also that the use of the cars is a thing of value. The bill does not follow up its allegation that the cars are not used "for profit or hire" by further allegations that the railroad companies do not allow appellant à lower freight rate in the nature of a rebate or a sum of money equivalent to a rental value on each car. By the express terms of the statute appellant is engaged in "operating cars" over a railroad line or lines in Mississippi that belong to other companies. If appellant owned the railroad line, it of course would not come within the terms of the act. The very purpose of the act is to impose a tax on cars not belonging to the railway companies.

It is further to be noted that chapter 114, Laws of 1912, entitled "An act providing for the taxation of equipment companies," was passed by the legislature at the same time and was approved on the same day that chapter 113 was approved. The essential business of an equipment company is to hold title to cars, engines, and rolling stock, and furnish same for the use of railroad companies for a stipulated profit, rental, or hire, and to serve as a device to prevent the equipment from becoming subject to the lien of trust deeds or mortgages executed by railroad companies. The defense interposed by appellant would be more appropriately pleaded against chapter 114, taxing equipment companies. It is our judgment, therefore, that complainant made sufficient admissions in its bill of complaint to bring it within the terms of the statute.

Without discussing in detail the objections to the constitutionality of the law, we hold that the statute does not contravene either section 112 of our state Constitution or any provisions of the Federal Constitution. By the express provisions of section 112 of our state Constitution the legislature may provide for a special mode of valuation and assessment for ''corporate property, or for particular species of property belonging to persons, corporations, or associations not situated wholly in one county.'' The Legislature in its wisdom has adopted this method of arriving at the valuation of that portion of appellant's property used in Mississippi, and the tax imposed is in lieu of all other *ad valorem* taxes. It is a means of imposing a legitimate tax upon the rolling stock of appellant situated in and used in Mississippi. The tax is equal and uniform, as contemplated by section 112, because all property of the same kind is classed for taxation in the safe way.

There is no manifest effort here by the legislature to burden interstate commerce. ''The mere fact that a corporation is engaged in interstate commerce does not exempt its property from . . . taxation.'' *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, 34 Sup. Ct. 15, 58 L. Ed. 127. ''A resort to the receipts of property or capital employed, in part at least, in interstate commerce, when such receipts or capital are not taxed as such, but are taken as a mere measure of a tax of lawful authority within the state, has been sustained.'' *Id.* On both of these propositions abundant authorities are collated in the opinion of the United States supreme court just referred to.

It must readily be conceded that our state has no right to impose a tax that directly burdens interstate commerce. The present company, however, is not chartered primarily to transport commerce, although it is doing an interstate business. It is engaged in the general business of slaughtering animals and of packing

and selling their products. In doing this business in Mississippi it owns and uses its own cars, and these cars so situated or used in Mississippi are proper subjects of taxation. "By whatever name the exaction may be called, if it amounts to no more than the ordinary tax upon property or a just equivalent therefor, ascertained by reference thereto, it is not open to attack as inconsistent with the Constitution." *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S. 688, 15 Sup. Ct. 268, 39 L. Ed. 311; *U. S. Express Co.* v. *Minnesota,* 223 U. S. 335, 32 Sup. Ct. 211, 56 L. Ed. 459.

In the present case a very small tax has been assessed against appellant. Just how the amount of this tax was arrived at the bill does not show. We are justified in assuming that appellant complied with the statute in furnishing the statements called for by the law in question, and that upon the information furnished the amount of the tax was assessed in accordance with the terms of the statute. Be that as it may, the bill does not advise the court how many cars appellant uses or operates in Mississippi, and does not charge that the state officers in levying the tax pursued any method except that provided by the statute. The gravamen of the bill is an assault upon the constitutionality of the statute, and, the objections on constitutional grounds being without merit, we think the bill fails to state a cause of action. The learned chancellor in disposing of the case prepared and delivered a written opinion, the reasoning of which, as well as the decree based thereon, meets with our approval.

*Affirmed.*