**PENNY STORES, Inc., v. MITCHELL, Atty. Gen. of Mississippi, et al.**

**No. 325.**

District Court, S. D. Mississippi, Jackson Division.

July 7, 1932.

Watkins, Watkins & Eager, of Jackson, Miss., for plaintiff.

J. A. Lauderdale, Asst. Atty. Gen., and W. L. Guice, Sp. Counsel, of Biloxi, Miss., for defendants.

Before a specially constituted court under section 266 of the Judicial Code, as amended, USCA, title 28, § 380, composed of FOSTER, Circuit Judge, and GRUBB and HOLMES, District Judges.

HOLMES, District Judge.

On May 10, 1930, effective on June 1 thereafter, the Mississippi Legislature enacted House Bill No. 567 (Laws Miss. 1930, c. 90), entitled an act to provide for additional public revenues by a "tax upon the privilege to engage in certain businesses; and imposing a tax on the sale of cigars and cigarettes; and a tax upon the price of admission to places of public amusement." A method of collecting the tax was provided, as well as penalties for failure to comply with its terms.

The act levied an annual privilege tax upon various business activities in different amounts to be determined by the application of rates or percentages of gross incomes or gross proceeds of sales. Section (2-c), article 1, is as follows:

"Upon every person engaging or continuing within this State in the business of selling any tangible property whatsoever, real or personal, (not including, however, bonds or other evidence of indebtedness, or stocks), there is likewise hereby levied, and shall be collected, a tax equivalent to one-fourth of one per cent of the gross income of the business; Provided, However, that in the case of a wholesaler or jobber, the tax shall be equal to one-eighth of one per cent of the gross income of the business. *Provided, further, that if any person shall operate more than five stores in this State, at or by which any such property is sold, at retail, there is likewise hereby levied on, and shall be collected of, such person, an additional tax equivalent to one-fourth of one per cent of the gross income of the business of all such stores.*

"The classification of wholesaler or jobber shall be used only by any person doing a regularly organized wholesale or jobbing business, known to the trade as such, and having regularly in his exclusive employment one or more traveling salesmen."

As a condition precedent to transacting any business in the state, a license to engage in the business was required. By the terms of the statute the tax constitutes a debt due the state, and a lien for its payment is fixed upon all the property of the person owing it.

Upon June 23, 1930, the Penny Stores, Inc., a corporation, filed an original bill on its own behalf, and, under Equity Rule 38

(28 USCA § 723), in the interest of other operators of more than five stores, seeking to restrain the enforcement of the act and alleging that the portion in italics of section (2-c), above quoted, imposing an additional tax of one-fourth of 1 per cent. on operators of more than five stores, which additional amount was not imposed upon operators of less than six, violated section 1 of the Fourteenth Amendment to the Constitution of the United States, which provides that no state shall deprive any person of life, liberty, or property without due process of law, or deny to any person within its jurisdiction the equal protection of the law, and also violated section 112 of the Constitution of the state of Mississippi, which provides that taxation shall be equal and uniform throughout the state. It alleged that the additional tax was arbitrary, discriminatory, and void, and that a cloud was cast upon plaintiff's real estate by the effort of state officers to collect it. Other grounds of equitable relief, not necessary to be stated, were invoked.

A temporary restraining order was issued and a three-judge court organized. The plaintiff made application for an interlocutory injunction, notice of which was served upon the defendants, including the Attorney General and Governor of the state. No answer or motion to dismiss the bill was filed. On the contrary it was conceded by the Attorney General of Mississippi, who appeared for the defendants, at the hearing of the application for an interlocutory injunction, that the case was properly cognizable in equity if the statute assailed was void because in violation of the due process and equal protection clauses of the Federal Constitution.

The interlocutory injunction was granted by the specially constituted court in September, 1930, and the defendants appealed from the order to the Supreme Court of the United States. Pending the appeal, by consent of the parties, no answer was filed by the defendants, it being agreed that the case would be presented to the Supreme Court on its merits. In its reply brief in that court the appellants stated: "Neither is there involved in this case the question of any adequate remedy at law, for the appellant admits that if the law is unconstitutional and invalid that the injunction should have been issued. The sole question before the court, therefore, is the question which we shall attempt to argue in this brief in reply to the brief of appellee, that is, an answer to point two of the appellee's brief."

In a per curiam opinion, reported in 284 U. S. 576, 52 S. Ct. 27, 76 L. Ed. ——, the court stated: "Oct. 26, 1931. Per Curiam. In this suit, brought to enjoin the enforcement of the provisions of sections (2-c), 11, and 13 of article 1 of chapter 90 of the Laws of Mississippi of 1930, an application was made to the District Court of the United States for an interlocutory injunction. The District Court, composed of three judges (U. S. C., title 28, § 380 [28 USCA § 380]), granted an interlocutory injunction upon the giving by the plaintiffs of a bond payable to the State of Mississippi in the sum of $5,000, conditioned as required by law, restraining the enforcement of the statutory provisions until the cause could be fully heard and determined. No opinion was rendered by the District Court, and the only question presented by the record upon this appeal is whether the District Court abused its discretion in granting an injunction until the case could be heard upon the merits. Alabama v. United States, 279 U. S. 229, 231, 73 L. Ed. 675, 677, 49 S. Ct. 266; United Fuel Gas Co. v. Public Service Commission, 278 U. S. 322, 326, 73 L. Ed. 402, 404, 49 S. Ct. 157; National F. Ins. Co. v. Thompson, 281 U. S. 331, 338, 74 L. Ed. 881, 886, 50 S. Ct. 288. The order was made prior to the decision of this Court in State Board of Tax Com'rs v. Jackson, 283 U. S. 527, 75 L. Ed. 1248, 73 A. L. R. 1464, 51 S. Ct. 540, and, as no abuse of discretion is shown, the order must be affirmed."

Afterwards came the decisions by the Supreme Court in the case of Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447, and Stratton v. St. Louis Southwestern Railway Co., 284 U. S. 530, 52 S. Ct. 222, 76 L. Ed. 465. In the former the court held that the Mississippi law afforded a full, adequate, and complete remedy for the illegal exaction by a sheriff of payment of an ordinary privilege tax.

On February 6, 1932, the defendants filed an answer on the merits, and also moved to dismiss the bill for lack of equity on its face. Much proof was taken. When the case came on for final hearing before this court on April 28, 1932, and was argued on its merits, the defendants for the first time presented to the court their motion to dismiss the bill for lack of equity.

We shall not stop to consider whether this case should be distinguished from the two above mentioned, because of the additional equity claimed that a cloud is cast upon the title of real estate, as we think that,

in the circumstances outlined, the motion comes too late. The express agreement of the Attorney General, and his whole conduct of the case on behalf of the defendants, estop them from interposing such a motion at this time to a consideration of the bill on its merits. The motion to dismiss is overruled. New Orleans v. Gaine's Administrator, 138 U. S. 595, 11 S. Ct. 428, 34 L. Ed. 1102; St. Louis, K. C. & C. R. Co. v. Wabash R. Co., 217 U. S. 247, 30 S. Ct. 510, 54 L. Ed. 752.

While the appeal from the interlocutory order in this case was pending, the Indiana and North Carolina chain store cases were decided. State Board of Tax Commissioners v. Jackson, 283 U. S. 527, 51 S. Ct. 540, 75 L. Ed. 1248, 73 A. L. R. 1464, and the Great Atlantic & Pacific Tea Co. v. Maxwell, 284 U. S. 575, 52 S. Ct. 26, 76 L. Ed. ——. Conceding as it must the authoritative effect of these decisions, the plaintiff puts forth four propositions, one of fact and three of law, to distinguish the case at bar. The first is that on the facts of this case, as shown by the proof, the elements of difference between chain and ordinary stores are not present in Mississippi. The argument is that in this case the complainants have introduced experts, who have given positive and undisputed testimony, based upon facts and not theories, and that from this undisputed testimony it appears that the differences pointed out by the Supreme Court of the United States in the Indiana and North Carolina cases are indisputably shown not to exist in the state of Mississippi, and, if existing to any extent whatsoever, that their existence has no relation to the difference between the operation of more than five and less than six stores. The second is that the Mississippi statute is not a privilege or occupation tax, but is a tax on gross sales. The third is that the act is violative of section 112 of the Constitution of the state of Mississippi. The fourth is that the alleged retroactive effect of the Mississippi statute in doubling the tax on the first five stores, when the number owned exceeds five, is vicious to the point of confiscation in the amount of the excess because the owner of only five or less is exempted from the double assessment.

First. In resolving the first proposition against the plaintiff we are not unmindful of the rule that constitutional questions are not to be dealt with abstractly, but that an examination of factual conditions should be more weighty with the courts than the mere "elaboration of legal formulas." While the law arises out of the facts, after it has arisen, and been pronounced by the court of last resort, it should be received with deference, and followed in other cases where the same essential facts are present. Superficial variations should not be permitted to swerve the result from the one logically indicated by the former decision.

Expert witnesses have testified that, in their opinion, there is no real or substantial difference in the operation, management, or opportunities for profit, between chain and ordinary stores in Mississippi. This is not surprising as upon the same facts reasonable men may draw, and have drawn with reference to the subject of this controversy, directly opposite conclusions. The matter of classification is not for expert witnesses, but for the Legislature, primarily and conclusively, unless a state of facts reasonably cannot be conceived to sustain it.

The essential facts of single ownership of multiple stores are the same on this record as in the Indiana and North Carolina cases. First and foremost, there is the physical difference of operating many stores under one management in more or less widely separated localities. This distinction cannot be effaced by expert testimony. McCarty, a witness for the plaintiff, and a chain store operator, was asked why he did business at more than one store if he would get the same advantages from one store that he got from a number of them. His answer was: "We can serve certain patrons with greater convenience." This brings the case squarely within the rule announced in Singer Sewing Machine Co. v. Brickell, 233 U. S. 304, 34 S. Ct. 493, 58 L. Ed. 974, where the only difference in the two persons selling sewing machines was that one could serve its customers with greater convenience than the other. Other differences were pointed out by the court in the Jackson Case, 283 U. S. 527, 51 S. Ct. 540, 542, 75 L. Ed. 1248, 73 A. L. R. 1464. In that case, as in the case at bar, the evidence indicated that all of the advantages were "interrelated and interdependent in the chain store business. The witnesses conceded that some of them may be found in large independent grocery or drug stores or the like, but they did not, as appellee claims, state that all of them combined, exist therein, as in chain stores."

Finally, the interpretation of the facts upon the question of whether the evidence reveals a condition, or state of facts, from which a real and substantial basis for a separate classification could reasonably be con-

ceived by the Legislature, is in the last instance for the Supreme Court of the United States, and it is not logical to expect that court to find from the evidence before us that there are no differences and advantages in favor of the chain store owner in Mississippi, when it has previously found and pointed out that there are numerous such distinctions in Indiana and North Carolina, and that such advantages in favor of the chain store are "shown by the number of such chains established and by their astonishing growth." We, therefore, conclude that there are no basic facts existing in Mississippi not present in the two cases mentioned.

■ Second. The plaintiff contends that the act assailed, determined by its practical effect, is not a privilege or occupation tax, but is a tax upon gross sales. As will be subsequently pointed out, to grant this premise would not change the conclusion, but it cannot be granted. We would do violence to the language and plain intent of the legislation to construe it as other than an act to provide for raising additional public revenue by a tax upon the privilege to engage in certain businesses. No tax is levied upon an isolated sale or upon any number of isolated sales. It is an annual privilege tax on account of the business activities of every person engaged or continuing within this state in the particular business designated. To be liable for the tax a person must be a dealer in, or manufacturer of, the article sold, or must be engaged in the business of the designated trade, profession, or avocation, for instance, as a merchant, barber, lawyer, or doctor. The portion of the act which we have quoted deals with ordinary retail merchants, operators of more than five stores, and wholesalers or jobbers. The ordinary retailers are taxed one-fourth of 1 per cent., the chain store owners one-half of 1 per cent., and the wholesalers or jobbers one-eighth of 1 per cent. of the gross income of the business. With a few exceptions every other method of earning a livelihood in the state of Mississippi is subjected to the payment of a privilege tax, the amount of which is ascertained by computing a specified percentage of the gross income. The percentages range from one-tenth of 1 per cent. to 1 per cent., except in the case of dealers in cigars and cigarettes, wherein the rate is 20 per cent. The amount to be paid by each is rendered certain by the computation mentioned. A license to conduct such business is made a condition precedent to the right

to engage or continue in it. We find nothing in the act, or in the factual conditions under which it operates, to indicate that it is not, as its name implies, a tax upon the privilege of pursuing certain businesses.

In the case of Quaker City Cab Co. v. Pennsylvania, 277 U. S. 389, 48 S. Ct. 553, 555, 72 L. Ed. 927, it was held that a tax upon gross receipts from the operation of taxicabs by a corporation was invalid, because no such liability attached when the operation was by an individual; and the suggestion is made that the strictures of the equal protection clause are less severe in taxation upon property than upon privileges or occupations. Possibly the legislative discretion to classify in the latter instance "may walk with a larger tether" than may be granted in the matter of taxation upon property, but in each a classification is necessary to support a discrimination, and in either it may not be purely arbitrary, but must be predicated upon a reasonable basis of difference inherently related to the purpose of taxation, which ordinarily is to raise revenue. In the case mentioned the tax was not invalidated because it was not a privilege tax, but because the sole distinction was in the character of the owner; there was no difference "in the source of the receipts or in the situation or character of the property employed." Mr. Justice Roberts pointed out that this was the error the lower court fell into in the Indiana case (State Board of Tax Com'rs v. Jackson): "It disregarded the differences shown by the record. They consist not merely in ownership, but in organization, management, and type of business transacted."

■ Third. Section 112 of the Mississippi Constitution relates entirely to ad valorem taxation. It has been repeatedly held by the Supreme Court of the state that it has no application to privilege, excise, or occupation taxes. It does not prohibit the Legislature from taxing certain occupations and exempting others or from taxing certain classes of the same occupation and exempting other classes. Coca-Cola Co. v. Skillman, 91 Miss. 677, 44 So. 985; Hattiesburg Grocery Co. v. Robertson, 126 Miss. 34, 88 So. 4, 25 A. L. R. 748; First National Bank of Biloxi v. Board of Supervisors of Harrison County, 157 Miss. 197, 127 So. 686; State v. Gulf, M. & N. R. Co., 138 Miss. 70, 104 So. 689; Postal Telegraph & Cable Co. v. Robertson, 116 Miss. 204, 76 So. 560; Clarksdale Ins. Agency v. Cole, 87 Miss. 637, 40 So. 228.

In Coca-Cola Company v. Skillman, supra, the court said: "The right of the Legislature to select certain species of property, or occupations, and impose upon the person dealing in that certain class of property, or following the occupation classified, a certain privilege tax, is too well established in the law to be now successfully controverted. * * It is no objection to this law that there may be other proprietary drinks upon which a privilege tax is not levied. The Legislature were the sole and exclusive judges of what property and what proprietary drinks they should classify and impose a privilege tax on."

It is the duty of this court to follow the decisions of the highest court of the state in interpreting the Mississippi Constitution. Douglas v. Noble, 261 U. S. 165, 43 S. Ct. 203, 67 L. Ed. 590; United States ex rel. Pioneer Const. Co. v. Madison County, 263 U. S. 718, 44 S. Ct. 180, 68 L. Ed. 523; Jones v. City of Portland, 245 U. S. 217, 38 S. Ct. 112, 62 L. Ed. 252, L. R. A. 1918C, 765, Ann. Cas. 1918E, 660.

Fourth. The legislative right to classify being established, we see no reason to strike down the Mississippi statute because it has only two classes instead of five, as in Indiana, or because of a difference of opinion between state Legislatures as to the number of units necessary to constitute a chain store. In North Carolina a merchant with one store is exempt from any tax. In Indiana he pays $3. In Mississippi the statute draws the line between five and six, and the owner of less than six pays an amount equal to one-fourth of 1 per cent. of his gross sales; the owner of more than five, one-half of 1 per cent. on all such stores. This includes the first five because they have the same advantages as the rest. We have seen that at some point in number a change takes place in basic characteristics of all the stores. After the change there are differences in organization, management, and type of business transacted. Looked at by itself, without regard to the necessity of fixing the point, it may seem arbitrary to draw the line between five and six, or at any other specific point. But the cases cited have judicially decided that such a line or point exists at or near which the metamorphosis takes place. There is no mathematical method of fixing it precisely, and, the function being a legislative one, its decision should be accepted unless palpably unfair and oppressive. When the transformation is accomplished, the reaction is the same upon the first five stores as upon the succeeding ones. Therefore, there is no vice in fixing the same measure of taxation for each of the stores in the entire chain.

We conclude that the bill should be dismissed, and it is so ordered.